# Jennifer M. Rohrer, Ph.D.

Licensed Psychologist (FL & GA)
Licensed Clinical Psychologist (VA)
Clinical and Forensic Psychology
813.393.0449
dr.rohrer@capitalpsychology.net

Confidential Psychological Evaluation

December 12, 2021

Re: *United States of America v. Dawson Ladale Crews*
Case No: 3:21CR36MMH-JTB

Dear Ms. Call:

At your request, I conducted a confidential psychological evaluation of Mr. Dawson Ladale Crews, a 23-year-old (DOB: 4/22/98), White male, regarding his charges of Enticing and Coerce a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing Visual Depictions of Such Conduct (5 counts).

Mr. Crews was evaluated on 10/25/21 at the Bradford County Jail.

**Sources of Information:**

- Clinical interview with Mr. Crews (10/25/21 for about 90 minutes)
- Discovery
- Indictment (dated 4/29/21)
- Arrest Report (dated 3/26/20)
- Warrant Served (dated 10/1/19)
- Arrest Report (dated 9/28/19)
- Arrest Report (dated 4/11/18)
- Forensic Psychological Evaluation conducted by Alan Harris, Ph.D. (date 7/12/21)
- Notes from Tricia Reese, Investigator regarding a telephone interview with Mr. Crew's mother, Ms. Charity Crews (no date)
- School records
- Records from Social Security Administration
- Records from Meridian Behavioral Health
- Records from the FL DOC

**Notification of Rights:**

Prior to proceeding with the interview, Mr. Crews was advised of its nature and purpose, the extent to which information obtained could be used, and of his rights to withhold such information, consult with his attorney, and terminate the examination at any time that he chose. Verbalizing an understanding of this information, Mr. Crews agreed to participate.

Re: *United States of America v. Dawson Ladale Crews*
Case No: 3:21CR36MMH-JTB
Dates of Evaluation: 10/25/21
Date of Report: 12/12/21
2

**Relevant Background Information:** Background information was obtained from available records and Mr. Crews, who appeared to be a generally reliable historian for the purpose of the evaluation.

Clinical Interview with Mr. Crews: Mr. Crews reported that he was born and raised by his mother and grandfather along with two half-siblings in Starke County, Florida. He noted that his father "didn't wanna be in the picture." He described himself as having been "spoiled" as a child. At age 8, he was reportedly sexually abused by an older male cousin ("he touched me"). He denied a history of any additional childhood abuse. According to Mr. Crews, he has never been married nor fathered any children. He stated that he had his girlfriend have dated "on and off" for 6 years. He indicated that he obtained his current charges while incarcerated with the FL DOC, having previously lived with his grandfather before being sentenced to prison. He noted that his grandmother died due to pneumonia in 2012 and a female friend committed suicide when they were both age 13.

Mr. Crews reported that he withdrew from the 8th grade at age 16 and had repeated kindergarten and the 6th grades in school. He stated that he was expelled from the 6th and 7th grades due to "fighting." According to Mr. Crews, he last worked at a gas station for about six months in 2019. He noted that his girlfriend "made [him] quit" because he had been "flirting with other girls" at work. He stated that he received disability benefits since age 21 and he denied having a payee for them.

Mr. Crews denied a history of medical issues or conditions. Psychiatrically, according to Mr. Crews, he has been Baker Acted eight or nine times since age 13 with his last admission occurring at age 18 or 19. He indicated that he received a diagnosis of "bipolar depression," for which he received Abilify, at Meridian Behavioral Health and during his incarceration with the DOC. Mr. Crews reported a history of at least six suicidal gestures/attempts by "hanging, cutting, overdose, [and] strangling." He stated that he is currently receiving Abilify.

Mr. Crews reported occasional use of alcohol and abuse of methamphetamine and marijuana. He denied a history of substance abuse treatment. According to Mr. Crews, he was incarcerated with the FL DOC for the offense of "harmful materials to minors."

Collateral Information: School records suggest that Mr. Crews was functioning within the average range of intellectual functioning based on psychological testing at age 5 and he received speech, language, and occupation therapy due to a Specific Learning Disability. At age 15, he received services due to a Specific Learning Disability and Language Impairment.

Records from Meridian indicate the following diagnoses for Mr. Crews from 2014 to 2020: oppositional defiant disorder, an adjustment disorder, depressive disorders, a bipolar disorder, an intellectual disability, and cannabis use disorder. He also tested positive for

cannabis, methadone, methamphetamine, opiates, oxycodone, and propoxyphene during those years.

According to records, Mr. Crews began receiving disability benefits due to depression, a bipolar disorder, anxiety, and Obsessive Compulsive Disorder in 2018. An intellectual disorder was also reflected in the records.

Records from the FL DOC did not include any psychiatric history including diagnoses or treatment for Mr. Crews.

Mr. Crews underwent a Court ordered forensic psychological evaluation on 6/25/21 in this case. Based on the results of that evaluation, Dr. Harris opined that Mr. Crews was competent to proceed at that time. Diagnostic impressions included a bipolar disorder, methamphetamine use disorder, and cannabis use disorder.

According to Ms. Reese, Ms. Crews reported that her son is a product of rape and she used marijuana, tobacco, and alcohol throughout her pregnancy with him. Her son was reportedly born with his umbilical cord wrapped around his neck and he was hospitalized for two weeks after his birth due to failure to thrive. At age 18 months, Mr. Crews was reportedly hospitalized for 5 days for a possible infection that he may have obtained at birth. Ms. Crews noted that her son never met his biological father and was raised to believe that his stepfather was his biological father until age 7. Regarding education, per Ms. Crews, her son had attended remedial classes for slow learning and did not complete the 7th grade in school. She suspected that he may have been sexually abused but the abuse was never verified. Ms. Crews also reported that her son's grandmother, with whom he shared a close relationship, died in 2012, since which time, his behavior changed significantly including failing to complete his activities of daily living. Per Ms. Crews, her son has made numerous suicidal gestures/attempts and has been Baker Acted on at least 11 occasions at Meridian Behavioral Health. He is reportedly often noncompliant with treatment when not institutionalized and had been abusing methamphetamine and ecstasy daily.

**Mental Status Examination and Behavioral Observations:**

Mr. Crews is a 23-year-old, White male, who was alert, cooperative, and fully oriented. He wore jail-issued attire, evidenced adequate grooming and hygiene, and made appropriate eye contact. His mood was euthymic; his affect, blunted. Mr. Crews denied current suicidal or homicidal ideation and reported sleeping and eating without impairment. Mr. Crews' speech and thought processes were coherent and relevant, yet commensurate with lower intellectual functioning. There were no signs or symptoms of a formal thought disorder, and he did not appear to be distracted by or responding to hallucinations. No delusional material was elicited. Mr. Crews demonstrated adequate attention and concentration and

Re: *United States of America v. Dawson Ladale Crews*
Case No: 3:21CR36MMH-JTB
Dates of Evaluation: 10/25/21
Date of Report: 12/12/21
4

there were no difficulties with his immediate, recent, or remote memory. He appeared to be functioning within the borderline range of intellectual ability with impaired insight and judgment.

**Psychological Assessment:**

Mr. Crews was administered the KBIT-2, a screening instrument that yields a reliable estimate of current intellectual functioning. He appeared to be motivated and put forth adequate effort on all the tasks presented to him. Therefore, the results are deemed a valid estimate of his current cognitive functioning. On the KBIT-2, Mr. Crews obtained a Verbal Standard Score of 70 (2nd percentile), a Nonverbal Standard Score of 80 (9th percentile), and an IQ Composite Standard Score of 71 (3rd percentile). His Verbal and Nonverbal Standard Scores were not significantly different, indicating that Mr. Crews' verbal and nonverbal abilities are fairly evenly developed. Note that these scores are consistent with a diagnosis of Borderline Intellectual Functioning.

**Summary and Recommendations:**

Mr. Crews is a 23-year-old male, who reports a history of childhood sexual abuse and the suicide of a friend at age 13. At age 5, results from psychological testing suggested Average intellectual ability yet he received a diagnosis of and remediation for a Specific Learning Disability. However, records later reflect a diagnosis of Intellectual Disability (*yet I saw no psychological testing to support this diagnosis from either Meridian or Social Security*). And results from current psychological testing suggest Borderline Intellectual Functioning.

Mr. Crew's psychiatric history is just as complicated, as records reflect a variety of psychiatric diagnoses yet do not appear to consider his chronic abuse of methamphetamine and other substances when having assigned those diagnoses. Mr. Crews was recently opined to be competent to stand trial in this case by Dr. Harris, who assigned diagnoses of a bipolar disorder and Amphetamine-Type Substance and Cannabis Use Disorders.

It does appear that Mr. Crews' intellectual functioning has declined over the years, as he tested within the Average range at age 5 and now tests within the Borderline range. This could be due to his history of polysubstance abuse, his early childhood medical conditions (e.g., failure to thrive and an infection), another factor, or a combination of these factors.

Given his chronic abuse of substances that are known to cause mood and psychotic symptoms, accurate psychiatric diagnosis is very challenging in Mr. Crews' case. At a minimum, current diagnostic impressions include **Borderline Intellectual Functioning; Specific Learning Disability (by Histry); Cannabis and Amphetamine-Type Substance Use Disorders; Unspecified Depressive Disorder; and Unspecified Personality**

Re: <i>United States of America v. Dawson Ladale Crews</i><br>
Case No: 3:21CR36MMH-JTB<br>
Dates of Evaluation: 10/25/21<br>
Date of Report: 12/12/21<br>
5

**Disorder (Cluster B Traits)** with rule out diagnoses **of Unspecified Neurocognitive Disorder and Unspecified Bipolar and Related Disorder**.

Based on the results of this evaluation, a **neuropsychological examination** is recommended to determine the etiology and nature of his cognitive decline over the years.

Thank you so much for this referral.  Please contact me with any questions.

                                         Respectfully submitted,

                                         *Jennifer M. Rohrer*

                                         Jennifer M. Rohrer, Ph.D.<br>
                                         Licensed Psychologist